UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────

№ 15-CV-3854 (JFB) (AKT)

───────────────────

TRUSTEES OF EMPIRE STATE CARPENTERS ANNUITY, APPRENTICESHIP, LABOR-MANAGEMENT COOPERATION, PENSION AND WELFARE FUNDS,

Petitioners,

VERSUS

ALLIED DESIGN & CONSTRUCTION, LLC,

Respondent.

───────────────────

MEMORANDUM AND ORDER
November 18, 2016

───────────────────

JOSEPH F. BIANCO, District Judge:

Petitioners, Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Cooperation, Pension and Welfare Funds (the "petitioners" or the "Funds") brought this action to confirm an arbitration award obtained against Allied Design & Construction, LLC (the "respondent" or "Allied"). The petitioners also move to recover attorneys' fees and costs in connection with this action. For the reasons set forth below, the Court grants the petitioners' motion to confirm the arbitration award and grants the petitioners' motion for fees and costs.

I. BACKGROUND

A. Facts

The following facts are drawn from the Funds' Petition to Confirm an Arbitration Award ("Pet.") and accompanying exhibits. (ECF No. 1.)

Allied is subject to a collective bargaining agreement ("CBA") with the Northeast Regional Council of Carpenters ("Union"). (Pet. ¶ 7, Ex. A.) The CBA compels Allied to make contributions to the Funds for all work within the trade and geographical jurisdiction of the Union. (Id. ¶ 8, Ex. A, art. 17.) The Funds also established a Joint Policy for Collection of Delinquent Contributions ("Collection Policy"), which requires an employer to submit to a payroll audit upon the Funds' request to ensure compliance with the CBA's contribution requirement. (Id. ¶¶ 10–11, Ex. B, art. 4.1.) In the event an employer refuses to permit an audit, the Collection Policy provides that the Funds "shall determine the estimated amount of the employer's delinquent contributions," at which time the

matter becomes subject to arbitration. (*Id.* ¶ 11, Ex. B, art 4.7.) Should the arbitrator find the employer deficient, the Collection Policy renders the employer "responsible for all delinquent contributions in the estimated amount . . . and all interest, attorneys' fees, costs, auditor's fees, arbitrator's fees and liquidated damages." (*Id.*, Ex. B, art. 4.7.) Interest on delinquent contributions is calculated at a rate of 0.75% per month, and liquidated damages are set at 20% of the delinquent contributions. (*Id.* ¶¶ 12–13, Ex. B, arts. 2.1.C, 6.1.)

The Funds initiated arbitration, claiming Allied failed to submit to a payroll audit, and sent notice of the arbitration to Allied. (*Id.* ¶¶ 14, 15, 18, Ex. C.) They estimated that Allied owed $175,032.51 for the period from April 17, 2012 through December 31, 2014. (*Id.* ¶ 15, Ex. F.) The arbitrator held a hearing on May 20, 2015, but Allied failed to appear. (*Id.* Ex. F.) In his written findings dated May 23, 2015, the arbitrator concluded that Allied refused to submit to an audit and was deficient in the amount calculated by the Funds. (*Id.*) He then ordered Allied to pay the Funds $175,032.51 in estimated deficiency, $28,212.46 in interest, $35,006.50 in liquidated damages, $900.00 in attorneys' fees, and $750.00 in the arbitrator's fees, for a total amount of $239,901.47. (*Id.* Ex. F.)

B. Procedural History

The Funds filed their petition in this Court seeking confirmation of the award as well as costs and attorneys' fees on July 1, 2015. (ECF No. 1.) A summons was issued as to Allied on July 2, 2015 (ECF No. 5.), and was returned executed on July 15, 2015. (ECF No. 6.) To date, Allied has not filed an Answer or appeared in this action.

II. CONFIRMATION OF ARBITRATION AWARD

A. Standard of Review

Courts treat motions to confirm an arbitration award "as akin to a motion for summary judgment." As such, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). A party must support an assertion that a fact cannot be or is genuinely disputed by

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). If the moving party meets its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)) (emphasis added in original). In ruling on the motion, a district court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw

all reasonable inferences in favor of that party, and to eschew credibility assessments." *Phaneuf v. Fraikin*, 448 F.3d 591, 595 (2d Cir. 2006) (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004)).

B. Discussion

Federal courts have jurisdiction over petitions brought to confirm labor arbitration awards under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). The LMRA embodies a "federal policy of settling labor disputes by arbitration," and the Supreme Court has recognized that giving courts final say on the merits of arbitration awards would undermine this policy. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S. Ct. 364, 370, 98 L. Ed. 2d 286 (1987) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S. Ct. 1358, 1360, 4 L. Ed. 2d 1424 (1960)). It follows that "courts play only a limited role when asked to review the decision of an arbitrator." *Id.*; *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S. Ct. 1724, 1728, 149 L. Ed. 2d 740 (2001) ("Judicial review of a labor-arbitration decision pursuant to such an agreement is very limited."); *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) ("[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.").

Specifically, the court's role is to confirm the arbitration award if it "'draws its essence from the collective bargaining agreement' and is not the arbitrator's 'own brand of industrial justice.'" *First Nat. Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, Affiliated with the Retail, Wholesale & Dep't Store Union, AFL-CIO*, 118 F.3d 892, 896 (2d Cir. 1997). An award satisfies this standard if the "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Major League Baseball*, 532 U.S. at 509, 121 S. Ct. at 1728.

In *Local 1199, Drug, Hospital and Health Care Employees Union, RWDSU, AFL-CIO v. Brooks Drug Co.*, 956 F.2d 22, 26 (2d Cir. 1992), for example, the Second Circuit upheld an arbitrator's interpretation of a contract even though he arguably misconstrued it. Specifically, the court discerned "ambiguity in the clause" of the contract in question, and thus held that the arbitrator could justifiably consult extrinsic evidence as well as other clauses of the contract. *Id.* Although the factors the arbitrator consulted were "by no means dispositive of the issue in th[e] case," the Second Circuit upheld the district court's confirmation of the award because "the rationale behind the arbitrator's award was supported at least in part by extrinsic evidence of the parties' intent." *Id.*

Under *Brooks Drug Co.*, the arbitrator's award in this case plainly draws its essence from the CBA. Unlike in *Brooks Drug Co.*, where there was ambiguity in the contract, the CBA here expressly requires Allied to make contributions to the Funds, Pet. ¶ 8, Ex. A, art. 17., and the Collection Policy expressly permits payroll audits to which Allied must submit. *Id.* ¶¶ 10–11, Ex. B, art. 4.1. The Collection Policy also spells out the procedures for the parties to follow in the event an employer fails to submit to an audit, which include an estimation of the deficient contributions by the Funds and submitting the dispute to binding arbitration. *Id.* ¶ 11, Ex. B, art 4.7. Furthermore, the Policy directs arbitrators to hold employers responsible for the estimated deficient

amount, interest calculated at a rate of 0.75% per month, attorneys' fees, costs, auditor's fees, arbitrator's fees, and liquidated damages set at 20% of the delinquent contributions. *Id.* ¶¶ 11–13, Ex. B, arts. 4.7, 2.1.C, 6.1.

The arbitrator's award followed the terms of the CBA and Collection Policy to the letter. The arbitrator found that the Funds followed all the appropriate procedures and awarded an amount consistent with the contract's requirements. The award is based on uncontroverted evidence that Allied failed to pay the estimated amount of $175,032.51 in deficient contributions from April 17, 2012 through December 31, 2014.[1] The award amounts for interest, liquidated damages, attorneys' fees, and the arbitrator's fee are also consistent with the contract's terms, and nothing in the record suggests the award is "in contradiction of the clearly expressed language of the contract." *Brooks Drug Co.*, 956 F.2d at 26. The court therefore confirms the arbitration award of May 23, 2015.

### III. PETITIONER'S ENTITLEMENT TO ATTORNEYS' FEES AND COSTS

The petitioners also seek to recover $850.00 in attorneys' fees and costs associated with this action to confirm the arbitration award. While neither the LMRA nor the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, authorize the award of attorneys' fees in an action to confirm an arbitration award, *see, e.g.*, *Trustees of The N.Y. City Dist. Council of Carpenters Pension Fund v. TNS Mgmt. Servs., Inc.*, No. 13-CIV.-2716 (JMF), 2014 WL 100008, at *4 (S.D.N.Y. Jan. 10, 2014), and "[t]he general rule in our legal system is that each party must pay its own attorney's fees and expenses," *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010), the Collection Policy provides that delinquent employers shall pay the Funds' attorneys' fees and cost incurred in collection efforts. Pet. Ex. B, art. 6.3. This agreement provides a basis for this court to award attorneys' fees and costs. *See, e.g.*, *N.Y. City Dist. Council of Carpenters Pension Fund v. Dafna Const. Co.*, 438 F. Supp. 2d 238, 242 (S.D.N.Y. 2006) (awarding attorneys' fees in a confirmation proceeding where "the Agreement itself require[d] [the defendant] to pay attorneys' fees incurred by the Trustees in seeking confirmation"); *Trustees of N.Y. City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. All. Workroom Corp.*, No. 13-CIV-5096 (KPF), 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) ("Petitioners

---

[1] Upon review of the record, it appears that Allied may have agreed to the CBA on September 6, 2012. *See* Pet. Ex. A (short form agreement signed by Allied on September 6, 2012). If Allied's contribution obligation did not begin until that time, the Funds overestimated Allied's deficiency because their estimate covered the period from April 17, 2012 through December 31, 2014, a period which began *before* Allied signed the contract. It is certainly possible, however, that there was an earlier agreement covering the period from April 17 through September 6, 2012, although this was not included in the petition. In any event, the Supreme Court has established that a district court may not "reconsider the merits of an award even though the parties may allege that the award rests on errors of fact." *United Paperworkers*, 484 U.S. at 36, 108 S. Ct. at 370. Indeed, it has held that "serious error[s]" and "'improvident, even silly, factfinding' do[] not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball*, 532 U.S. at 509, 121 S. Ct. at 1728 (quoting *United Paperworkers*, 484 U.S. at 39, 108 S. Ct. at 371). In light of this rule, coupled with Allied's failure to allege any factual error, the court's discovery of a possible factual error on the arbitrator's part does not give it the authority to reconsider the award.

are entitled to attorney's fees under both ERISA and the CBA.").

## A. Attorneys' Fees

Courts in the Second Circuit employ the "lodestar figure" to determine reasonable fees and costs. *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). This figure is calculated by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *Id.* It is well established that the "lodestar . . . creates a 'presumptively reasonable fee,'" *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008), and the burden is on the party seeking attorneys' fees to present evidence of hours worked and rates claimed, *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994).

A "reasonable hourly rate" is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011). This Court follows the "forum rule," which "generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.* at 290. Courts in this district consistently determine that an hourly rate of $200 to $325 is a reasonable hourly rate for senior associates while $100 to $200 is a reasonable hourly rate for more junior associates. *See Favors v. Cuomo*, 39 F. Supp. 3d 276, 301 (E.D.N.Y. 2014) (collecting cases); *see also, e.g.*, *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation v. Dipizio Constr., Inc.*, No. 15-CV-2592 (JFB)(AYS), 2016 WL 3033722, at *5 (E.D.N.Y. May 25, 2016); *Ferrara v. Prof'l Pavers Corp.*, No. 11-CV-1433 (KAM)(RER), 2013 WL 1212816, at *2 (E.D.N.Y. Mar. 23, 2013); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 165 (E.D.N.Y. 2008).

The petitioners seek attorneys' fees at a rate of $225.00 per hour for attorneys Elina Burke and Jonathan Roffe. Ms. Burke graduated from Fordham University School of Law in 2011 and works as an associate at Virginia & Ambinder, LLP ("V&A"). Pet. ¶ 27. Mr. Roffe graduated from Benjamin N. Cardozo School of Law in 2014 and is also an associate at V&A. Pet. ¶ 28. As a more experienced associate, Ms. Burke's requested rate of $225.00 per hour falls within the range routinely approved by courts for associates of her level. *See Dipizio*, 2016 WL 3033722, at *5; *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012) (collecting cases). Mr. Roffe's requested rate, however, is too high, as the rate for junior associates in this district is $100 to $200. *See Dipizio*, 2016 WL 3033722, at *5; *Hugee*, 852 F. Supp. 2d at 298 (collecting cases). Therefore, Ms. Burke's rate shall be set at $225.00 per hour and Mr. Roffe's rate shall be set at $150.00 per hour.

A party seeking attorneys' fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Cruz*, 34 F.3d at 1160 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983)). The hours worked "should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). In calculating the number of hours worked, a court must exclude "[h]ours that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939–40.).

The attorneys submitted an invoice from V&A dated July 1, 2015 documenting the hours worked on June 22, 23, 30 and July 1, 2015. Pet. Ex. E. It shows that the attorneys worked for a total of two hours on this matter. *Id.* Ms. Burke billed 0.50 hours of time reviewing and revising the petition to confirm the award, and Mr. Roffe billed 1.5 hours for drafting and editing the petition and the memorandum of law in support of the petition and preparing exhibits. *Id.*

Courts in this district routinely accept invoices as sufficient to satisfy the contemporaneous records requirement so long as they provide "a clear description of the work performed, the time spent on the respective matter, the attorney who rendered services, and the date the services were performed." *Big R Food Warehouses v. Local 338 RWDSU*, 896 F. Supp. 292, 295 (E.D.N.Y. 1995); s*ee, e.g.*, *Home Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc.*, No. 10–CV–4677 (ADS)(ETB), 2012 WL 1078963, at *7 (E.D.N.Y. Jan. 4, 2012), report and recommendation adopted, 2012 WL 1078886 (E.D.N.Y. Mar. 30, 2012); *Fuerst v. Fuerst*, No. 10–CV–3941, 2012 WL 1145934, at *4 (E.D.N.Y. Apr. 5, 2012); *Boster v. Braccia*, No. 06–CV–4756 (JG)(RER), 2007 WL 4287704, at *2 (E.D.N.Y. Dec. 4, 2007). The Court sees no reason to depart from this practice here, as the V&A invoice reports in sufficient detail the type of work performed by the two attorneys, the date on which the work was performed, and the time spent on each task. Furthermore, based on the descriptions of the tasks performed and the lack of opposition to the petition, the Court finds that the two hours bills on the matter is a reasonable number of hours billed.

Consequently, the court calculates the lodestar figure to be $337.50 and there appears to be no reason to depart from this figure. *See Perdue*, 559 U.S. at 553 (noting that the lodestar figure includes "most, if not all," relevant factors in setting reasonable attorney's fee).

The Court therefore awards the petitioners $337.50 in attorneys' fees.

B. Costs

A court may also award "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients" as a portion of attorney's fees. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *United States Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir.1989)). Again, the party seeking to recover costs must "adequately document[] and itemize[e] the costs requested." *Pennacchio v. Powers*, No. 05-CV-985 (RRM)(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011); *see also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM)(SMG), 2013 WL 950573, at *10 (E.D.N.Y. Mar. 12, 2013). Local Civil Rule 54.1 provides that the party seeking costs shall submit "an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred" as well as "[b]ills for the costs claimed . . . attached as exhibits."

The petitioners' invoice for attorneys' fees includes an itemization of the sole cost they are requesting: the $400 filing fee. Pet. Ex. E; *see also id.* ¶ 32. The invoice satisfies the itemization requirement, and it is well established in this district that the filing fee qualifies as a recoverable cost. *See, e.g.*, *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 279 (E.D.N.Y. 2010); *Jacobson v. Peterbilt Elec. Contracting, Inc.*, 553 F. Supp. 2d 211, 217 (E.D.N.Y. 2008); *New*

*Leadership Comm. v. Davidson*, 23 F. Supp. 2d 301, 305 (E.D.N.Y.1998).

Accordingly, the Court awards petitioners $400.00 in costs.

\* \* \*

In sum, the Court confirms the arbitrator's award of $239,901.47 and further orders Allied to pay an additional $737.50 in attorneys' fees and costs associated with this litigation.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: _____
    Central Islip, NY